IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:07cv135

| | | |
|---|---|---|
| JAMES DAVID MOSS; MARTHA GEAN MOSS; and JAMES LLOYD MOSS, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| Vs. | ) ) | ORDER |
| JEFFREY N. MACKEY, Individually and as an Officer of the Maggie Valley Police Department, SCOTT SUTTON, Individually and as Chief of the Maggie Valley Police Department, MAGGIE VALLEY POLICE DEPARTMENT, TOWN OF MAGGIE VALLEY, BRIAN E. SIZEMORE, Individually and as a Deputy of the Haywood County Sheriff's Department, R. TOM ALEXANDER, as Sheriff of the Haywood County Sheriff's Department; and HAYWOOD COUNTY SHERIFF'S DEPARTMENT, HAYWOOD COUNTY, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**THIS MATTER** is before the court on R. Thomas Alexander, Jeffrey N. Mackey, Scott Sutton, Town of Maggie Valley, Brian E. Sizemore's (hereinafter the "public defendants") Motion for Attorneys Fees and Costs (#62) and David Francis's (hereinafter the "private defendant") Motion for Attorneys Fees and Costs (#64). A hearing was conducted on such motion on January 23, 2009. Having carefully

considered such motions, the briefs, and the arguments, the court enters the following findings, conclusions, and Order.

## FINDINGS AND CONCLUSIONS

**I.      Background**

The court incorporates in its entirety the factual, procedural, and legal discussion of this case contained in the previously filed Memorandum of Decision. The following discussion is added to clarify the instant motions for attorneys fees and costs.

On April 22, 2008, plaintiffs filed their "Stipulation of Dismissal" of the claims asserted against the former private defendant, David Francis.[1] Thus, only the merits of plaintiffs' claims against the public defendants have been considered by this court. As has been made clear in the private defendant's motion, such stipulation of dismissal was prompted by a series of safe harbor letters sent to counsel for plaintiff by counsel for the private defendant. The stipulation of dismissal was apparently filed a few days after the private defendant sent its last safe harbor letter. On October 1, 2008, this court granted the public defendants' Motion for Summary Judgment.

While the court was considering the merits of the Motion for Summary Judgment and had nearly completed its work on the Memorandum of Decision, the parties filed a joint stipulation of dismissal as to all claims asserted by plaintiff Martha Moss and as to all claims asserted by all plaintiffs against public defendant Brian Sizemore. See Docket Entry #53.

---

[1]      Defendant Francis is no longer a captioned defendant inasmuch as the parties took a voluntary dismissal of claims against such defendant prior to entry of judgment.

## II. Standard Applicable to Section 1988 Motions for Attorneys Fees and Costs

Defendants have each moved under 42, United States Code, Section 1988, for attorneys fees and costs in this action under a theory that they were prevailing parties. In the alternative, the defendants seek attorneys fees and costs under the court's inherent power.

In general and in the most usual circumstances, a *plaintiff* is entitled to attorney's fees if he prevails in an action brought under Sections 1981, 1983, or 1985. As a prerequisite, the plaintiff must obtain some "relief on merits" to be considered a prevailing party. Hewitt v. Helms, 482 U.S. 755 (1987). Receiving an award of damages is not necessary. Ganey v. Garrison, 813 F.2d 650 (4th Cir. 1987). In the context of a prevailing plaintiff, plaintiff is not required to show that he has prevailed on a "central issue," but need only succeed on any significant issue that materially alters the legal relationship between the parties. Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782 (1989).

The standards are somewhat different for defendants who successfully defend against a Section 1981, 1983, or 1985 claim. Prevailing defendants are not entitled to attorney's fees under Section 1988 absent a showing that plaintiff's claims were objectively "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after his claim clearly became so." Introcaso v. Cunningham, 857 F.2d 965, 967 (4th Cir. 1988) (quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422 (1978)). The so called "chilling effect" of awarding fees against a civil rights litigant, and argument raised by plaintiffs herein, does not prevent the award of fees

when the standard of Christiansburg is otherwise met by defendants. Hutchinson v. Staton, 994 F.2d 1076 (4th Cir. 1993).

## III. Discussion of Each Defendant's Section 1988 Claim for Fees and Costs

### A. The Private Defendant

The private defendant contends that even though plaintiffs took a voluntary dismissal of their claims against him under the safe harbor provisions of Rule 11, Federal Rules of Civil Procedure, he is still a "prevailing party" and is entitled to recover the substantial fees and costs he incurred in both securing such dismissal, preparing a proposed motion to dismiss, and in otherwise conducting discovery. The issues raised by this motion are as follows: (1) is a defendant who secures a Rule 11 dismissal a prevailing party; and (2) does Rule 11(c)(2) preclude any award of fees or costs to one who takes safe harbor.

#### 1. Prevailing Party

In considering whether the private defendant can claim status as a prevailing party under Section 1988, the court has carefully considered the Supreme Court's definition of "prevailing party." In Buckhannon Bd. And Care Home. Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. 598 (2001), the Supreme Court held as follows:

> In designating those parties eligible for an award of litigation costs, Congress employed the term "prevailing party," a legal term of art. *Black's Law Dictionary* 1145 (7th ed.1999) defines "prevailing party" as "[a] party in whose favor a judgment is rendered, regardless of the amount of damages awarded <in certain cases, the court will award attorney's fees to the prevailing party>.-Also termed successful party."

> This view that a "prevailing party" is one who has been awarded some relief by the court can be distilled from our prior cases
>
> * * *
>
> In addition to judgments on the merits, we have held that settlement agreements enforced through a consent decree may serve as the basis for an award of attorney's fees. *See Maher v. Gagne*, 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980). Although a consent decree does not always include an admission of liability by the defendant, *see, e.g., id.*, at 126, n. 8, 100 S.Ct. 2570, it nonetheless is a court-ordered "chang[e][in] the legal relationship between [the plaintiff] and the defendant." *Texas State Teachers Assn. v. Garland Independent School Dist.*, 489 U.S. 782, 792, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) *(citing Hewitt, supra*, at 760-761, 107 S.Ct. 2672, and *Rhodes v. Stewart*, 488 U.S. 1, 3-4, 109 S.Ct. 202, 102 L.Ed.2d 1 (1988) (*per curiam*) ). These decisions, taken together, establish that enforceable judgments on the merits and court-ordered consent decrees create the "material alteration of the legal relationship of the parties" necessary to permit an award of attorney's fees. 489 U.S., at 792-793, 109 S.Ct. 1486; see also *Hanrahan, supra*, at 757, 100 S.Ct. 1987 ("[I]t seems clearly to have been the intent of Congress to permit ... an interlocutory award only to a party who has established his entitlement to some relief on the merits of his claims, either in the trial court or on appeal " (emphasis added)).

Id., at 598 (footnotes omitted). Such definition and discussion gives the court some pause as to whether a defendant who was voluntarily dismissed could be considered to be a prevailing party inasmuch as such defendant was afforded no relief by this court. Indeed, it appears that the voluntary dismissal was entered without seeking court approval under Rule 41(a)(2).

The court has next turned to the legislative history of Section 1988. The House Report on Section 1988 provides that: "[a] prevailing defendant may also recover its fees when the plaintiff seeks and obtains a voluntary dismissal of a groundless complaint . . . ." H.Rep. No. 94-1558, 94th Cong., 2d Sess. 7-8 (1976). While such legislative history would suggest an easy answer, the history leaves open how it can

be determined whether the Complaint was groundless when the dismissal taken was without a judicial finding of frivolousness. A few courts have addressed this issue head on, and the court will cite from one decision extensively as it is instructive. In Hughes v. Unified School Dist. No. 330, Wabaunsee County, Kan., 872 F.Supp. 882 (D.Kan. 1994), the district court held, as follows:

> Does a defendant prevail when the plaintiff voluntarily dismisses the action with prejudice? Case law on this question is scant. For purposes of awarding costs under Rule 54, the defendant generally is not viewed as a prevailing party when the plaintiff voluntarily dismisses with prejudice. *Nemeroff v. Abelson*, 620 F.2d 339, 350 (2nd Cir.1980) *(citing Mobile Power Enterprises, Inc. v. Power Vac, Inc.*, 496 F.2d 1311, 1312 (10th Cir.1974); *see generally* 6 *Moore's Federal Practice* ¶ 54.70[4] (2d ed. 1976)); *But see Schwarz v. Folloder*, 767 F.2d 125, 130-31 (5th Cir.1985).
> As for attorney's fee awards, the Eighth Circuit in *Marquart v. Lodge 837* [26 F.3d 842 (8th Cir. 1994)]offers a logical framework for analyzing voluntary dismissals. The pro se plaintiff in that case dismissed with prejudice her Title VII complaint four days before trial. The district court awarded attorney's fees to the defendant, and circuit court reversed this award on a finding that the defendant was not a prevailing party under Title VII. The Eighth Circuit appears to be the only federal appellate court to have struggled recently with a definition for "prevailing defendant." For that reason, the court will take the time to lay out the more important conclusions in *Marquart v. Lodge 837* and the reasoning behind them.
> The Eighth Circuit rejected the Farrar "material alteration of the legal relationship among the parties" language as a common definition of prevailing party for both plaintiffs and defendants. 26 F.3d at 850-51. The court construed *Farrar* as setting "the extreme contours of what constitutes a prevailing civil rights plaintiff for purposes of fee-shifting. These contours are meant to be extreme because, under the broad, policy-oriented, Christiansburg definition, a prevailing plaintiff is entitled to attorneys' fees except under very special circumstances." 26 F.3d at 850. With such a broad definition of a prevailing plaintiff, the courts have the latitude, as observed by the Eighth Circuit, to reward the plaintiffs for their service as private attorneys general. *Id.* at 851. The Eighth Circuit considered *Farrar* and the three cases discussed therein to be the Supreme Court's chances to adopt a general definition of prevailing party. Because the Supreme Court passed each time, the

Eighth Circuit reasoned that the Court in each instance was only defining a prevailing plaintiff. 26 F.3d at 851. Therefore, the *Marquart* panel concluded that the *Farrar* definition of prevailing plaintiff could not be transformed into a general definition of prevailing party. 26 F.3d at 851.

The Eighth Circuit then reviewed its decisions where attorney's fees were awarded to prevailing defendants. 26 F.3d at 851. From its review, the panel concluded:

> Where there are disputed issues of fact, it is necessarily impossible to prove that a plaintiff's case is meritless shy of a full-blown trial on the merits which might reveal that the plaintiff's case was "without foundation." Where there are no disputed issues of fact, and where the defendant has moved the court for summary judgment as a matter of law, however, the defendant may also be able to prove that a plaintiff's claim was frivolous, unreasonable, or groundless.

26 F.3d at 852. In light of the *Christiansburg* test, the *Marquart* panel found that a defendant cannot prove the plaintiff's case to be frivolous, unreasonable or groundless without a judicial determination of the case on its merits. *Id.* at 852. Such a determination is not possible unless the merits of the case have been tried or the subject of dispositive motion. Id.

The Eighth Circuit applied its conclusions, as follows:

> In this case, Marquart voluntarily withdrew her complaint with prejudice prior to a judicial determination on the merits. We emphasize that there is not a *scintilla* of evidence that Marquart voluntarily withdrew her complaint to escape a disfavorable judicial determination on the merits. So far as appears, Marquart's decision to withdraw her complaint voluntarily was a matter of litigation strategy. It is often very difficult to prove hostile work environment cases. The decision to withdraw a complaint with prejudice and to pursue state law claims instead is a legitimate litigation strategy. Marquart "should not be penalized for doing precisely what [s]he should have done. To award attorney's fees under these facts would undermine the direction of Congress that private Title VII plaintiffs are the chosen instrument for the enforcement of the civil rights laws.... The court would create a disincentive to the enforcement of civil rights laws if Title VII plaintiffs were required to risk attorney's fees upon discovery that [the case] posed insurmountable problems of proof." *Westmoreland v. J.I. Case Co.*, 714 F.Supp. 397, 398 (E.D.Wis.1989).

> * * * *
>
> In summary, we will grant prevailing party status to a Title VII defendant only in very narrow circumstances. To obtain prevailing party status, a defendant must be able to point to a judicial declaration to its benefit. This might be an order granting a defendant's motion for summary judgment on the merits.
>
> 26 F.3d at 852. In short, a defendant is not a prevailing party, according to *Marquart*, unless it has benefitted from a judicial determination going to the merits of the case. An order dismissing a case with prejudice is not such an order, if it simply grants the plaintiff's motion to dismiss that was filed before a judicial determination on the merits. 26 F.3d at 852. The *Marquart* opinion, however, suggests that a court should consider whether the plaintiff moved to dismiss only to avoid an expected, unfavorable judicial decision on the merits. *Id.* Presumably, the Eighth Circuit would recognize an exception where a defendant can be a prevailing party upon proof that the plaintiff dismissed his suit to avoid an adverse judicial decision on the merits.

Id., at 885-887. As expressed by this court, the court in Hughes pointed out that the reasoning of Marquart does not offend the legislative history inasmuch as the voluntary dismissal must be of a "groundless complaint," finding that such decision "would recognize a **prevailing** defendant's right to recover attorney's fees when the plaintiff voluntarily dismisses a groundless complaint." Id., at 888 (emphasis in original). See also Carter v. City of Philadelphia, 2000 WL 1273008 (E.D.Pa. 2000).[2]

The court has applied both Buckhannon Bd. And Care Home. Inc. and Hughes and cannot find that the private defendant is a prevailing party inasmuch as plaintiffs took a voluntary dismissal of their claims against him before the court had any opportunity to address such claims on the merits. In order to make such determination at this point would require the court to reopen and revisit the Amended

---

[2] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the Westlaw citation.

Complaint. Had the private defendant wished to take such route, the private defendant could have either filed and briefed a Motion to Dismiss rather than file an Answer (see Docket Entry #41) or filed an immediate Motion for Summary Judgment attacking the merits of the Amended Complaint. See Fed.R.Civ.P. 56(b). Indeed, even more recent appellate decisions support this court's conclusions:

> To the extent defendants contend that Buckhannon's holding does not apply to dismissals obtained by defendants, that argument is now foreclosed by this court's recent discussion in Mr. L. v. Sloan. In that case, this court ruled that *Buckhannon*'s holding "that a prevailing party under federal fee-shifting statutes is one who has achieved a judicially sanctioned change in the legal relationship among the parties," applies in "prevailing defendant" cases. 449 F.3d at 405-06 (internal quotation marks omitted).

Dattner v. Conagra Foods, Inc., 458 F.3d 98, 102 (2nd Cir. 2006). Having been dismissed from this litigation without court intervention and before the merits of the claims against him were reached, the court finds that the private defendant is not a prevailing party within the meaning of Section 1988.

### 2. Safe Harbor

Even if the private defendant could qualify under Section 1988, the court has concerns under Rule 11(c)(2) inasmuch as that provision precludes any award of fees or costs to one who avails themselves of that provision's safe harbor.

> A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but <u>it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets</u>. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

Fed.R.Civ.P. 11(c)(2)(emphasis added). While the purpose of the punitive sanctions provided for in Rule 11 differ from the fee-shifting scheme basis of Section 1988, the standard applicable to both Section 1988 and Rule 11 is nearly identical, as they are both designed to discourage frivolous and bad faith pleadings. In this case, it is undisputed that after receiving the third safe-harbor letter from the private defendant, plaintiffs dismissed their action within days. To now allow the private defendant to come back some several months later and seek sanctions that would be within the realm of those allowable under Rule 11(c)(4) would be contrary to the rule, and frustrate the intent of the safe-harbor provision of the rule as well as discourage others from terminating unsupportable litigation.

### 3. Conclusion

Having considered the private defendant's Motion for Attorneys Fees and Costs under Section 1988, the court can find no legal basis to grant the relief sought inasmuch as the dismissal was taken before the court had any opportunity to review the merits of plaintiffs' claims against the private defendant. Further, it would appear offensive to Rule 11(c)(2) to now impose sanctions on plaintiffs who took appropriate action under Rule 11 when provided with a safe-harbor letter. While some time elapsed between the first safe-harbor letter and the voluntary dismissal, it would appear that the 21 day time period was reset by each new letter the private defendant's counsel sent. Indeed, the rule requires that the private defendant first serve the proposed motion for sanctions before the 21 day period for taking safe harbor begins to run. Fed.R.Civ.P. 11(c)(2). The argument presented in this case

reveals that the plaintiff dismissed their claims within three days of service of the proposed motion. The court will, therefore, deny the private defendant's Motion for Attorneys Fees and Costs under Section 1988.

**B.     The Public Defendants**

The motion of the public defendants is more straightforward than that of the private defendant inasmuch as the court reached the merits of the claims against the public defendants, and that determination can be reviewed in the 41 page Memorandum of Decision. As the court stated at the hearing, 90 percent of the court's efforts in this matter were expended in considering the claims of James David Moss. While such claims could not survive summary judgment, they were "colorable" claims under Section 1983 inasmuch as he took issue with the force used by Defendant Mackey in placing him in the patrol vehicle. The remainder of the claims by both James Lloyd Moss and Martha Gean Moss against the public defendants were not, however, colorable inasmuch as they failed to make good faith allegations that they had suffered any recognized constitutional harm at the hands of any public defendant. For the sake of judicial economy, the court did not immediately grant summary judgment as to such claims, preferring to include them in the Memorandum of Decision as to all claims asserted by all plaintiffs. Such motion ripened May 29, 2008, and it took the court nearly four months to consider the arguments and enter its 41 page memorandum of decision, which was spent almost in its entirety carefully considering the claims of plaintiff James David Moss. Had James David Moss's claims not been colorable, the court could have dispensed with

the entire case expeditiously.

The problem for the public defendants is not in showing that they are prevailing parties, or that plaintiffs asserted frivolous claims; instead, the problem comes in segregation of what is a substantial legal bill which was incurred by one attorney in the defense of multiple claims by multiple plaintiffs against multiple defendants. As counsel for the public defendants properly stated at the hearing, the time devoted to a particular plaintiff's claim cannot be parsed out at this time. Thus, the court's Section 1988 inquiry into the "Johnson Factors" (which were adopted by this Circuit from <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974)) cannot be completed as the crucial factor, which is time and labor required, cannot be discerned. While the court questioned counsel for the public defendants professional rates at the hearing under <u>Johnson</u>, the court does not question the value which such rate reflects inasmuch as Mr. McClatchy's experience and efficiency in civil rights litigation reflects an expertise that is of the highest caliber practiced in this district. Section 1988 requires this court in awarding fees to exercise "discretion," and the court simply cannot in good faith award Section 1988 fees with the precision required by <u>Johnson</u>. Thus, while the court is in full agreement that the claims of both James Lloyd Moss and Martha Gean Moss were frivolous, the court does not have the information necessary to award fees under Section 1988.

**IV. Discussion of Each Defendant's Request for Fees and Costs Under the Court's Inherent Authority**

Quite properly, the respective defendants have invoked the court's inherent authority to award fees and costs in the alternative to their motions under Section

1988. The court believes that respective counsel recognized the problems under Section 1988 for prevailing defendants, especially where certain claims were voluntary dismissed, other claims dismissed on the merits, and multiple plaintiffs had claims of varying vitality. In Conagra Foods, supra, the Court of Appeals for the Second Circuit held, as follows:

> Although a defendant who successfully obtains a dismissal on *forum non conveniens* grounds is not a "prevailing party" entitled to costs under Rule 54(d), we note that a district court may still, in appropriate circumstances, award costs to such a defendant pursuant to its inherent authority. Of course, the exercise of such authority requires the court to find that the plaintiff acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (internal quotation marks omitted); *accord Sassower v. Field*, 973 F.2d 75, 80-81 (2d Cir.1992) (holding that district court may, pursuant to its inherent authority, impose attorney's fees on unsuccessful pro se litigant if litigant acts in bad faith, vexatiously, wantonly, or for oppressive reasons); *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir.1991) ("One component of a court's inherent power is the power to assess costs and attorneys' fees against either the client or his attorney where a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." (internal quotation marks omitted)).

Dattner v. Conagra Foods, Inc., supra, at 103 -104.

The court is not, however, limited to the imposition of monetary sanctions under its inherent authority. The Court of Appeals for the Fourth Circuit held in Byrd v. Hopson, 108 Fed.Appx. 749 (4th Cir. 2004),[3] as follows:

> It is well-established that "[a] court has the inherent authority to disbar or suspend lawyers from practice ... derived from the lawyer's role as an officer of the court." *In re Evans*, 801 F.2d 703, 706 (4th Cir.1986); see In re Snyder, 472 U.S. 634, 643, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985).

---

[3] Due to the limits of Electronic Case Filing, a copy of such unpublished decision is placed in the electronic docket through incorporation of the West publication.

> Although we "owe substantial deference to the district court" in attorney disbarment decisions, Evans, 801 F.2d at 706, the inherent power to disbar an attorney must be "exercised with great caution," *Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 531, 6 L.Ed. 152 (1824). In particular, before imposing this extreme sanction, a court must determine that disbarment is necessary to achieve the purposes of attorney sanctions-most notably, protecting the public and deterring future abusive conduct. *See United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir.1993) (emphasizing that inherent power to impose sanctions "must be exercised with the greatest restraint and caution, and then only to the extent necessary"); *Byrne v. Nezhat*, 261 F.3d 1075, 1132 n. 112 (11th Cir.2001) (explaining that in selecting appropriate sanctions for attorney misconduct, courts should "deploy[ ] the least extreme sanction reasonably calculated to achieve the appropriate punitive and deterrent purposes" (internal quotation marks omitted)); *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 86 F.3d 464, 467-68 (5th Cir.1996) (holding that, in imposing attorney sanctions pursuant to inherent powers, courts must use the least severe sanction necessary to achieve the desired goals; observing that "the ultimate touchstone of inherent powers is necessity" (alteration & internal quotation marks omitted)); *Restatement (Third) of the Law Governing Lawyers* ch. 1, tit. C, introductory note (2000) ("The sanctions imposed in lawyer-discipline proceedings seek to protect clients and the public, to deter wrongful conduct by other lawyers, and specifically to deter future wrongful conduct seemingly threatened by the lawyer found to have violated mandatory rules.").

Id., at 756-757.

The court has considered the culpability of the plaintiffs and the culpability of counsel who signed the Amended Complaint, which clearly contained colorable as well as frivolous claims. While plaintiffs supposedly read and concurred in the Complaint, it is apparent that they failed to tell their attorney the complete story, which was only drawn out through depositions. In addition, it is clear that counsel for plaintiffs filed a number of claims that had no basis in law as well as fact, including a claim which plaintiffs contend was based on the "novel" theory of "transferred intent." Such a theory - - in which the female plaintiff later discovered

-14-

some pepper spray residue in her hair - - has been well foreclosed by case law which provides that mere negligence in the application of force does not amount to a constitutional violation. In <u>Brower v. County of Inyo</u>, 489 U.S. 593 (1989), the Supreme Court held that unintended consequences of government action could not form the basis of a Fourth Amendment violation: "[i]n sum, the Fourth Amendment addresses 'misuse of power,' not the accidental effects of otherwise lawful government conduct." <u>Id.</u>, at 596 (citation omitted). Thus, the law has not changed since the attorney for plaintiffs began practicing law in North Carolina since 1989.

The court is, therefore, compelled to exercise its inherent authority in this matter. In exercising such authority, the court has not only considered the financial impact that this litigation has had on the private and public defendants, but the resources of the plaintiffs and their ability to pay any award of attorneys fees that may be granted. Based on counsel for plaintiffs argument, which went unopposed in the hearing, these plaintiffs are people of the most modest means. Likewise, the private defendant is a person of modest means and has undertaken defense of this action out of his own pocket. While no career public servant can be considered wealthy, they have had the advantage of having their fees paid through publicly secured insurance.

While the costs of defense are substantial, perhaps more important to all the parties is the personal toll and loss of personal time that this litigation has required. When an action is filed in this court, plaintiffs and their counsel should well know that they will be interrupting and causing personal stress in the lives of those they are

suing. For this reason, they should make very sure that the claims they present have factual support and that they are not contrary to well established law. The Supreme Court decision in <u>Brower</u> has been the law since lead counsel for plaintiff was licensed to practice in North Carolina, some 20 years. Had lead counsel conducted minimal research and discovered such case, a large portion of the frivolous portions of the Amended Complaint could have been avoided.

The claims by James Lloyd Moss are also frivolous in that they lack any factual basis and they were made in contravention of prevailing case law. It simply goes beyond the acceptable practice of law in this court for a plaintiff to bring a claim against a civilian for deprivation of a constitutional right where the civilian simply intervened to stop that plaintiff's unlawful assault on a police officer. While such claim was properly dismissed before summary judgment was rendered, such plaintiff continued to pursue his claims against Deputy Sizemore, in which he contended that such defendant should have prevented the individual defendant from striking or shoving him, and that his failure to do so under a theory of "bystander liability." The court found this claim was "completely without legal or factual merit" under applicable law. Not only did such claim have no basis in federal law, the actions taken by the individual defendant in protecting the police officer from James Lloyd Moss's attack were mandated by state law. <u>State v. Hornbuckle</u>, 265 N.C. 312, 315 (1965).

* * *

The court will, therefore, exercise its discretion under the inherent authority of

the court and impose a sanction designed to discourage these plaintiffs and others from bringing frivolous litigation. In doing so, the court is mindful that plaintiffs sought out and relied upon the advice of experienced counsel, who apparently drafted the Amended Complaint in a manner that was inconsistent with well established law and would not have been supported by a reasonable investigation of the facts as to a number of claims. The court further observes that such errors of counsel appear to be an anomaly inasmuch as the court is familiar with lead counsel's professionalism, work product, and experience in federal court. Taking into consideration all such factors, an appropriate disposition is made below.

**ORDER**

**IT IS, THEREFORE, ORDERED** that R. Thomas Alexander, Jeffrey N. Mackey, Scott Sutton, Town of Maggie Valley, Brian E. Sizemore's (hereinafter the "public defendants") Motion for Attorneys Fees and Costs (#62) and David Francis's (hereinafter the "private defendant") Motion for Attorneys Fees and Costs (#64) are **GRANTED** in part and **DENIED** in part for the above stated reasons, and that the following award of attorneys fees and other sanctions is entered in accordance with the court inherent authority:

   (1) Martha Gean Moss and James Lloyd Moss shall pay $500 to counsel for the defendant David Francis to offset the cost of representation of such defendant;

   (2) Martha Gean Moss and James Lloyd Moss shall pay $500 to counsel for

the public defendants to offset the cost of representation of such defendants;

(3) lead counsel for plaintiff, Frank Contrivo, Sr., shall pay $1000 to counsel for the defendant David Francis to offset the cost of representation of such defendant;

(4) lead counsel for plaintiff, Frank Contrivo, Sr., shall pay $1000 to counsel for the public defendants to offset the cost of representation of such such defendants;

(5) lead counsel for plaintiff, Frank Contrivo, Sr., shall attend 12 hours of Continuing Legal Education in calendar year 2009 on the subject of Civil Rights Litigation and by December 31, 2009, certify such to the court; and

(6) lead counsel for plaintiff, Frank Contrivo, Sr., shall submit any civil rights complaint filed for the remainder of calendar year 2009 in this district for review by another member of the Bar of this court outside of his firm. Counsel shall secure the approval of such attorney, who may either sign the pleading or provide Mr. Contrivo with a private letter stating that he has reviewed the pleading and that it meets the standard of practice in this district.

**IT IS FURTHER ORDERED** that the individual defendant's Motion for Costs is **DENIED** under Rule 54 as such defendant was not a prevailing party under

prevailing law, and the public defendants' Motion for Costs is, respectfully, referred to Honorable Frank Johns, Clerk of Court, for disposition in accordance with Local Civil Rule 54.1.

Signed: February 9, 2009

*Dennis L. Howell*

Dennis L. Howell
United States Magistrate Judge